IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

JAMES ... 
CLERK
04 DEC 20 PM 12: 12
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

S. H., and all others similarly situated,       :
c/o Children's Law Center, Inc.
104 East Seventh Street                          :
Covington, Kentucky 41011,

                                                 :

S. W., a minor child, by and through            Case No. **2 : 04 cv 1 2 0 6**
her next friend Brenda Woods,                   :   Judge _____
and all others similarly situated,
c/o Children's Law Center, Inc.                  :        **JUDGE SMITH**
104 East Seventh Street
Covington, Kentucky 41011,                       :


D.J., a minor child, by and through             :
her next friend Vera Johnson,
and all others similarly situated,              :
c/o Children's Law Center, Inc.
104 East Seventh Street                          :          **CLASS ACTION**
Covington, Kentucky 41011,                                 **COMPLAINT FOR**
                                                 :         **DECLARATORY AND**
M. F., and all others similarly situated,                  **INJUNCTIVE RELIEF**
c/o Children's Law Center, Inc.                  :
104 East Seventh Street
Covington, Kentucky 41011,                       :


I.H., a minor child, by and through             :
her next friend Arthur Woodward,
and all others similarly situated,              :
c/o Children's Law Center, Inc.
104 East Seventh Street                          :
Covington, Kentucky 41011,

                                                 :

            and                                  :

A. E., and all others similarly situated,       :
c/o Children's Law Center, Inc.
104 East Seventh Street                          :
Covington, Kentucky 41011,

            Plaintiffs,                          :

V.                                               :

BOB TAFT,
Governor, State of Ohio,                         :
In his official capacity only,
77 South High Street, 30th Floor                 :
Columbus, Ohio 43215,
                                                 :

OHIO DEPARTMENT OF
YOUTH SERVICES,                                  :
51 North High Street
Columbus, Ohio 43215,                            :

GENO NATALUCCI-PERSICHETTI,                      :
Director of Youth Services,
In his official capacity only,                   :
51 North High Street
Columbus, Ohio 43215,                            :

JAMES HIENEMAN,                                  :
Acting Superintendent of Scioto
Juvenile Correction Facility,                    :
In his official capacity only,
51 North High Street                             :
Columbus, Ohio 43215,
                                                 :
        and
                                                 :
JAMES YORK,
Superintendent of Education,                     :
Ohio Department of Youth Services,
In his official capacity only,                   :
51 North High Street
Columbus, Ohio 43215,                            :

        Defendants.                              :

---

## I. INTRODUCTORY STATEMENT

1.    This is a civil rights class action brought by Plaintiffs on behalf of all girls who are

now or in the future will be confined at the Scioto Juvenile Correctional Facility ("Scioto"), operated

by the Ohio Department of Youth Services ("OYDS"), and who are subject to abusive and inhumane

2

conditions, policies, and practices. Defendants are deliberately indifferent to Plaintiffs' constitutional and legal rights, and Defendants' conditions, policies, and practices at Scioto constitute punishment and a substantial departure from accepted professional judgment, practices, and standards.

2.     In January, 2004, advocates put ODYS on notice of the unconstitutional conditions youth were being subjected to at Scioto. In response, ODYS sent a team of experts into Scioto to review the conditions of confinement. Those experts concluded, among other things, that a "culture of violence" among the uniformed staff persists at Scioto, verbal and physical abuse are common, sexual misconduct by staff occurs, only crisis-type mental health care is available, and structured programming consistent with clearly stated and shared objectives is virtually non-existent. (Interim Report, Fred Cohen, August 16, 2004, p. 4). Following the release of the experts' report, the lead expert noted:

> The serious problems that we discovered at Scioto must in some fashion trace back to Central Office. If the culture of violence, illegal sexual contact, absence of mental health care, lack of programming for example, were not known, then there is one set of issues. If they were known and action was accelerated only after hearing from the Youth Law Center, then there is another set of problems.

(Action Plan, Fred Cohen, September 21, 2004, p. 1).

3.     Despite the conclusions of their own experts, the Defendants have failed to remedy the unconstitutional conditions. In fact, Defendants have dismissed their experts' findings, failed to develop a comprehensive plan to address the unlawful conditions, and ultimately have failed to implement any meaningful changes to remedy the violations of Plaintiffs' rights. The Defendants' lead expert noted these failures after the Interim Report was issued:

3

> Thus, in some fashion a lack of oversight and clear direction from Central Office must be viewed as a significant part of Scioto's problems. Even now, one gets the continuing sense of a hastily arrived at, somewhat ad hoc, solutions being thrown into place but without a semblance of a master plan.

(Action Plan, p. 2)

> [S]ince the Interim Report was delivered, then made public by others, I have simply been taken "out of the loop." Major decisions impacting on such a plan have been made and we have not even been formally informed. Frankly, the seemingly random and spontaneous decisions that are being made seem reflective of a pattern of past behavior that contributed importantly to DYS' current problems.

(Action Plan, p. 5)

    4.    Plaintiffs bring this action to redress the violations by Defendants, acting under color of state law, of the civil and constitutional rights of Plaintiffs. The conditions in Scioto, and the policies and practices of the Defendants, endanger Plaintiffs' physical health and safety, threaten Plaintiffs' emotional and psychological well being, deprive Plaintiffs of adequate programming and education, and deprive Plaintiffs of due process of law.

    5.    Plaintiffs, individually and on behalf of the Plaintiff class, seek declaratory and injunctive relief against Defendants in their official capacities on the grounds that Defendants have deprived Plaintiffs of their rights secured to them by the First and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, and relevant provisions of the Ohio Constitution and Ohio law.

## II. JURISDICTION

6.    This Court has jurisdiction over this action under 28 U.S.C. § 1343(3), this being an action to redress the deprivation of rights under color of state law secured by the Constitution of the United States, the Civil Rights Act, and 42 U.S.C. §1983.

7.    This Court also has jurisdiction over this action under 28 U.S.C. § 1343(4), this being an action to secure declaratory and injunctive relief under Acts of Congress providing for the protection of civil rights, specifically the Civil Rights Act.

8.    This Court also has jurisdiction over this action under 28 U.S.C. § 1331(a), this being an action in which the matter in controversy arises under the Constitution and laws of the United States.

9.    This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

10.    This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to review and decide Plaintiffs' state law claims.

## III. VENUE

11.    The Southern District of Ohio is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) as the acts and events giving rise to the claims herein occurred within the boundaries of the Columbus Division of the Southern District of Ohio.

## IV. PARTIES

### A. Plaintiffs

12.    Each of the named Plaintiffs is a citizen of the United States and is currently incarcerated at Scioto. Each of the named Plaintiffs is personally subjected to Defendants'

5

conditions, policies, and practices at Scioto, as set forth herein, and each of the named Plaintiffs suffers actual injury as a result of those conditions, policies, and practices.

13.    Each of the named Plaintiffs who is a minor sues through his or her Next Friend, who is their parent or other adult citizen of the State of Ohio.

14.    Plaintiff S.H. is a 19 year old female from Cleveland, Ohio who has been incarcerated in Scioto since December 18, 2003. The conditions, policies, and practices described in this complaint to which she has been subjected include the inappropriate and extended use of isolation, excessive use of force by a Juvenile Correctional Officer ("JCO"), lack of appropriate mental health and medical care, and lack of an adequate grievances process to address her concerns. For example, S.H. became suicidal while in Scioto and threw a radio and attempted to stab herself with an ink pen. In response, a JCO choked her around the neck, tackled her to the ground, kneed her forcefully, and sat atop her with his crotch area in her face. S.H. was handcuffed and taken to an isolation cell. As a result of this incident, S.H. was required to serve five days of isolation and given thirty days of administrative time added to her sentence to Scioto. During her time in isolation, she suffered severe emotional distress, cried repeatedly, was not permitted to clean her cell properly, was denied recreation, and was permitted to leave the isolation cell only to shower. S.H. was not prescribed any medications during this time. S.H. also suffers from chronic foot pain and in August was informed by a doctor at Scioto that she would be given properly fitted shoes. In spite of her grievances on this issue, and representations by staff that she would be fitted properly with shoes, she has yet to receive any proper footwear. S.H. has made repeated requests to see a specialist regarding her foot and her request has not been granted. S.H. has filed numerous grievances regarding the JCO involved in the

6

above listed incidents, her overall lack of safety in Scioto, and the inadequacies of the current youth grievance system at Scioto including a written appeal letter to the Chief Inspector.

15.     Plaintiff S.W. is a 15 year old female from Dayton, Ohio and has been incarcerated in Scioto since July 23, 2004.  The conditions, policies, and practices described in this complaint to which she is subjected include verbal abuse by juvenile correction officers, physical abuse by juvenile correction officers, failure of Scioto staff and the chief inspector to respond to her written grievances, and failure to have her claims of abuse reported to the Ohio State Highway Patrol.  For example, S.W. has been physically harmed by three different JCO's and filed grievances regarding each of these incidents.  On one occasion, a JCO grabbed and choked S.W. and pushed S.W. through a closed door causing injury to her neck and a bump on her head.  On or about September 28th, while S.W. was on suicide watch,  a JCO called her a "bitch," choked her, and caused the top of her head to hit the floor.  On another occasion, a JCO forcibly used S.W.'s body to open a closed door, slapped S.W., stood on S.W.'s hair, and yanked S.W. upward causing a clump of S.W.'s hair to come out.  S.W's arm was twisted by the JCO.  S.W. was informed by an Operations Manager that one of her claims would be reported to the Ohio State Highway Patrol, but she has not been contacted regarding any investigation of this incident.  S.W. has felt intimidated and frightened of the JCO's and does not feel safe in the Scioto facility.  S.W. has also been called profane names by JCO's.  S.W. has filed grievances regarding these issues, including an appeal to the Chief Inspector's Office.

16.     Plaintiff D.J. is a 15 year old female from Cleveland, Ohio and has been incarcerated at Scioto since March 7 , 2003.  The conditions, policies, and practices described in this complaint to which she is subjected include inappropriate use of isolation and physical abuse by a Juvenile

7

Correction Officer. For example, D.J. was placed in isolation and asked by a male JCO to give him her shoes and her sweatshirt. D.J. did not comply because she only had a bra on underneath the sweatshirt. The incident resulted in an altercation whereby the JCO punched D.J., causing injury and bleeding to her mouth. D.J. was handcuffed by another staff member and, while handcuffed, a JCO swung at D.J., who was moved out of the way of the punch by another staff member. D.J. requested dental care in a written grievance and her request was denied. D.J. has filed a written grievance and a letter of appeal to the Chief Inspector.

17.    Plaintiff M.F. is an 18 year old female and from Trumbull County, Ohio and has been incarcerated in Scioto since May 20, 2004. The conditions, policies, and practices described in this complaint to which she is subjected concern the denial of daily recreation activity. For example, a JCO denied M.F.'s entire cottage recreation and denied M.F.'s request for recreation. Instead, the JCO cleaned the floors of the cottage with the assistance of some of the inmates. M.F. has previously filed grievances regarding the denial of routine and adequate recreation, but the denial of recreation continued. M.F. filed a grievance regarding this issue and wrote a letter of appeal to the Chief Inspector.

18.    Plaintiff I.H. is a 16 year old female and from Toledo, Ohio and has been incarcerated in Scioto since July 2, 2004. The conditions, policies, and practices described in this complaint to which she is subjected include inappropriate use of isolation pending a disciplinary hearing, inability to attend school programming while in seclusion, denial of food while in seclusion, lack of appropriate medical care and inability to access to medical care, inadequate school programming, physical abuse by a JCO, and denial of daily recreation. For example, I.H. is a student who has been identified with a disability under the Individuals with Disabilities Education Act. She has repeatedly

8

requested to have her educational program changed and has subsequently failed to show significant academic progress while incarcerated. At one point, in isolation in September, I.H. was not given breakfast or lunch. I.H. has been restrained by a staff member and kicked in her legs and kneed in her groin by a JCO. I.H. has not received care for an injured toe or an eczema-like rash despite requesting medical attention, nor has she timely received necessary eye glasses. I.H. has regularly been denied daily recreation. She has filed written grievances, filled out school request forms, and written a letter of appeal to the Chief Inspector.

19.    Plaintiff A.E. an 18 year old female from Cleveland, Ohio and has been incarcerated in Scioto since June 14, 2004. The conditions, policies, and practices described in this complaint to which she is subjected include verbal abuse by JCO's, failure to have a responsive youth grievance procedure, failure to receive child birth education programming, failure to receive timely and adequate medical attention while in preterm labor, and retaliatory discipline by staff for reporting staff misconduct. A.E. filed a grievance regarding a JCO for saying in A.E's presence and in reference to A.E.: "all the little bitch had to say was ma'am and maybe I won't write her ass up." In retaliation to filing this grievance, the JCO requested A.E. be disciplined for having "contraband" in her cell. The "contraband" consisted of an extra mattress and pillow given to A.E. by staff because of her pregnancy and sealed applesauce containers stored in her room to ensure they were not taken by other youth from the common area. A.E. suffered emotional distress when a JCO yelled profane language at her when she needed to leave her cell to use the restroom in the middle of the night. Staff discovered A.E. still crying the next morning and she was unable to sleep through the night for fear of the JCO who verbally abused her. When seven-and-a-half months pregnant, A.E. began cramping and bleeding. She repeatedly asked for help from staff who did not take her to the

9

hospital until after three days of painful cramping. Upon arrival to the hospital, A.E. was found to be in preterm labor which required injections of medication to end the contractions. She has written grievances on these issues, including an appeal to the Chief Inspector.

### B. Defendants

20.     Defendant Ohio Department of Youth Services ("ODYS) is an agency of the State of Ohio and, pursuant to Ohio Rev. Code § 5130.03, is mandated to control and manage all state institutions or facilities established or created for the training or rehabilitation of delinquent children committed to ODYS.

21.     Defendant Bob Taft is the duly elected governor of the State of Ohio and functions as the head of the State's executive branch. In addition, pursuant to Ohio Rev. Code § 5139.01(B), Governor Taft is statutorily required to appoint a director to head the Ohio Department of Youth Services with the advice and consent of the Senate.

22.     Defendant Geno Natalucci-Persichetti is the director of the Ohio Department of Youth Services. Pursuant to Chapter 121 of the Ohio Revised Code, Defendant Natalucci-Persichetti has full control of all juvenile institutions and programs under ODYS' administration, including Scioto. As the director of ODYS, Defendant Natalucci-Persichetti has been personally and directly involved in decisions to establish and maintain the conditions, policies, and practices described in this complaint. Plaintiffs bring this action against this Defendant in his official capacity. Defendant Geno Natalucci-Persichetti was asked to resign by Governor Bob Taft on or about November 29, 2004 and has submitted his resignation effective December 31, 2004.

23.     Defendant James Hieneman is the Acting Superintendent of the Scioto in Delaware, Ohio. As Superintendent of Scioto, Defendant Hieneman is responsible for the care and custody of

10

the girls confined therein; for establishing, administering, and enforcing policies and procedures for Scioto; for the maintenance and operation of the physical plant; for the hiring, firing, training, and supervision of Scioto staff; and other duties related to the maintenance and operation of Scioto. Plaintiffs bring this action against this Defendant in his official capacity.

24.    Defendant James York is the Superintendent of Education for the Ohio Department of Youth Services and as such is responsible for directing and assigning teachers and other school employees at Scioto and for the overall administration of school polices, procedures, and accountability measures. Plaintiffs bring this action against this Defendant in his official capacity.

## V. CLASS ACTION

25.    The named Plaintiffs bring this action on behalf of themselves and all other persons who are now, or in the future, will be held in custody at Scioto Juvenile Correctional Facility pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

26.    The class of Plaintiffs is so numerous that joinder of all members is impracticable, with as many as 130 girls confined at Scioto on any given day. In addition, there are questions of law and fact common to the members of the Plaintiff class. These include the factual circumstances and the legality and constitutionality of the conditions, policies, and practices under which Defendants confine Plaintiffs at Scioto.

27.    Defendants impose the conditions, policies, and practices challenged in this action on the named Plaintiffs and on the members of the Plaintiff class so that the claims of the named Plaintiffs are typical of those of the class.

28.    The named Plaintiffs will fairly and adequately represent the interests of the class. These Plaintiffs possess the requisite personal interest in the subject matter of the lawsuit. They are

11

represented by counsel experienced in class action litigation on behalf of children involving conditions of confinement. The Youth Law Center has litigated on behalf of children confined under abusive and illegal conditions of confinement in federal court in eighteen states over the past twenty-six years. The Children's Law Center has extensive litigation experience in federal and state court on behalf of children. Similarly, Jennifer Kinsley and the firm of Sirkin, Pinales, and Schwartz LLP has extensive experience in civil right litigation, including class action litigation.

29.    Defendants have acted and continue to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief and injunctive relief with respect to the class as the whole.

30.    The injuries suffered by the named Plaintiffs and the members of the Plaintiff class are capable of repetition, yet may evade review, thereby making class relief appropriate.

## VI. FACTUAL ALLEGATIONS

### A. Characteristics of the Facility and the Population

31.    Scioto serves as the intake or reception institution for all youth committed to ODYS. For boys, Scioto is the first stop as boys are moved out to permanent housing assignments in other institutions after assessment. For girls, Scioto is the permanent housing assignment for girls committed to ODYS for secure institutional confinement.

32.    Scioto is a multi-building campus that houses approximately 130 girls. The girls reside in two buildings, each with two housing units: one long-term unit, one short term unit, one intake unit, and a mental health unit. Girls attend school in three additional buildings while meals are served in a cafeteria that is also used by the boys in Scioto.

12

33.     Scioto serves girls ranging from age 12 years to 21 years who have been adjudicated delinquent for offenses ranging from less serious property offenses to serious person offenses. The girls in Scioto fit the national profile of incarcerated girls having childhood histories of trauma and abuse, mental health disorders, and family separation. Approximately, 55% of the girls in Scioto have a mental health diagnosis while approximately 42% take psychotropic medications. (Interim Report, p. 3).

34.     Ohio's legislated purposes for committing youth to ODYS are to provide for the care, protection, and mental and physical development of committed youth, to protect the public interest and safety, to hold the offender accountable for the offender's actions, to restore the victim, and to rehabilitate the offender. Under Ohio Revised Code Chapter 2151, these purposes shall be achieved by a system of graduated sanctions and services.

35.     Defendants have failed to meet their obligation to provide an environment at Scioto that does not violate Plaintiffs' constitutional rights.

### B.  Use of Excessive Force

36.     With Defendants' knowledge, and pursuant to official policy and custom, staff at Scioto use physical force on Plaintiffs when such force is excessive, unreasonable, and unnecessary to protect Plaintiffs from injury to themselves or to prevent injury to others. Defendants' own experts found that the "unwarranted use of physical force and seclusion to be endemic at Scioto" and found "countless examples of situations where no force at all should have been used and others where the force used was excessive." (Cohen Report, p. 10)

37.     Staff uses physical force in such a way to cause physical pain, emotional harm, and physical injury to Plaintiffs by hitting, choking, gripping, grabbing, twisting, bending, and applying

13

other applications of force on girls when they do not present a danger to themselves or others. Staff invite and heighten confrontation by approaching girls in an argumentative, threatening, and abusive manner.

38.     Staff at Scioto use mechanical restraints, applying 4-point restraints to girls in isolation when girls are fully in control and compliant and do not pose an imminent threat to themselves or others.

39.     In other instances where force may be warranted, staff at Scioto unnecessarily apply excessive amounts of force resulting in physical injury and emotional harm to Plaintiffs.

### C. Arbitrary and Excessive Use of Isolation and Seclusion

40.     Defendants regularly place Plaintiffs in lockdown and isolation for arbitrary reasons and for grossly excessive periods. Defendants routinely place Plaintiffs in isolation for several hours to several days as a disciplinary measure. Defendants also place Plaintiffs in special "isolation" cells, often as an informal disciplinary measure for arbitrary reasons and without providing due process. Defendants' experts found that "placement in seclusion is often in excess of four hours, and in one instance during February (2004) included a period of fourteen hours for being 'argumentative' and using a racial epitaph." (Interim Report, p. 15).

41.     As a result of continuing policies and practices, Defendants regularly place Plaintiffs in isolation as punishment, for the convenience of staff, or in some instances, instead of therapeutic programming. Defendants do not have a procedure by which qualified professionals determine the need for isolation or the amount of time necessary for isolation. Defendants fail to use isolation only for instances where Plaintiffs pose an immediate threat to the health or safety of themselves or others. Defendants fail to release Plaintiffs from isolation when they have demonstrated that they

14

are in control of themselves. Defendants fail to adequately monitor Plaintiffs in isolation. Defendants fail to provide adequate education, counseling, recreation, or other rehabilitative treatment to Plaintiffs in isolation.

42.    Although Defendants have written policies for procedural due process on discipline, in practice Defendants often fail to provide minimum procedural due process protections to Plaintiffs accused of violating institutional rules and facing substantial periods of isolation.

43.    Plaintiffs held in isolation experience extreme loneliness, anxiety, rage, and depression, among other potentially debilitating emotional and psychological problems. Defendants fail to ensure that prolonged use of isolation does not have adverse psychological consequences on isolated girls. As a result of Defendants' continuing policies and practices of prolonged isolation, girls suffer from physical injuries, including self inflicted injuries and emotional harm.

### D. Arbitrary and Excessive Discipline

44.    Defendants subject Plaintiffs to an arbitrary and punitive disciplinary system.

45.    Staff at Scioto arbitrarily punish Plaintiffs for behavior such as "being argumentative," mopping incorrectly, horse-playing with other children, and "rapping."

46.    Defendants' arbitrary practices lead to excessive punishment for Plaintiffs, including increased lockdown and isolation. These practices are especially detrimental for Plaintiffs with mental health problems including mental illnesses. Defendants' failure to adequately train and supervise staff to respond in appropriate ways to Plaintiffs with mental health issues. Excessive and arbitrary isolation are particularly harmful for Plaintiffs with mental health issues, and cause the unnecessary and wanton infliction of pain on these Plaintiffs.

15

47.    Defendants' arbitrary policies and practices also result in additional and extended incarceration.

### E. Abusive Violation of Privacy

50.    With Defendants' knowledge, and pursuant to official policy and custom, male staff at Scioto conducts strip searches of girls in the facility. This practice is abusive and demeaning to Plaintiffs.

### F. Inadequate Mental Health Care

51.    Defendants are deliberately indifferent to the serious mental health needs of Plaintiffs at Scioto. The majority of girls in Scioto have a mental health diagnosis and more than 40% take psychotropic medications. However, other than the provision of crisis intervention services and the dispensing of psychotropic medication, Defendants fail to provide any regular individualized psychiatric treatment, counseling, or psychotherapy to Plaintiffs in need of such services.

52.    Defendants' experts found that "mental health care was available only for crises," that only about one-third of the girls had treatment plans, and that "the few treatment plans that do exist are non-specific and incomplete." (Interim Report, p. 25). Defendants' experts "could find no evidence of mental health treatment, e.g., individual counseling, being provided by any discipline in the records that were reviewed." (Interim Report, pp. 25-26). The experts also found "no established referral mechanism or admission for the Mental Health Unit, treatment protocols, or significant individualized treatment planning or discharge planning efforts." (Interim Report, p. 28). The experts concluded that the "absence of a continuum of mental health care area among the highest priorities for immediate change at Scioto." (Interim Report, p. 24).

16

53.    Despite the experts' findings, Defendants still fail to provide a continuum of mental health services to meet the needs of Plaintiffs.  Defendants fail to maintain adequate mental health records for Plaintiffs.  Defendants fail to employ a sufficient number of qualified mental health professionals to counsel and treat Plaintiffs with mental health treatment needs.   Defendants also fail to provide adequate or effective group counseling by trained staff.  Defendants fail to adequately train and supervise staff at Scioto to care for youth with mental health needs.

54.    As a result of these failures, Plaintiffs do not receive counseling or other necessary mental health treatment, and their mental condition deteriorates. The result is that Plaintiffs with mental health treatment needs are incarcerated at Scioto without access to adequate mental health care.

### G. Inadequate Health Care

55.    Defendants are deliberately indifferent to health needs of Plaintiffs at Scioto. Defendants provide medical assessments to Plaintiffs upon admittance to Scioto, but fail to provide timely access to qualified health professionals when Plaintiffs are in need of health services and Defendants fail to deliver adequate healthcare services, when those services are provided.

56.    The Defendants' experts found that there is "no continuity of medical care and there is minimal documentation for the care that is provided." (Interim Report, p. 32).  Documented cases examined by the experts indicate "care appears to be delayed until it reaches an emergency level. Parenthetically, this is a direct analogy to the crisis-oriented mental health care system." (Interim Report, p. 36).

57.    Defendants' experts found that "(t)here is a history of lack of timeliness and/or adequate assessment of physical complaints.  Two of many examples: seven months after the initial

17

complaint a fracture is confirmed and treated; after a year of abdominal complaints and two physicals including a gynecological exam an emergency room visit results in surgery and a diagnosis of cancer with evidence of palpable masses. In the second example the youth entered the facility with a history and diagnosis that suggests cancer is possibility. Death ensued. There is no nursing care plan for youth with chronic disease (e.g., diabetes, asthma) and no identified method of follow up for annual requirements (e.g., TB testing, physical, etc.)." (Interim Report, p. 38).

58.    As a result of Defendants' deliberate indifference, Plaintiffs with health care needs do not receive adequate treatment and suffer physical and emotional harm.

**H. Failure to Provide Access to Adequate Education Services**

59.    Defendants fail to develop and implement policies and procedures to assure that all Plaintiffs have access to educational services mandated by state and federal law. Defendants' deficiencies include the failure to meet the classroom instructional mandates of state law, to provide an adequate number of teachers to prevent regular cancellation of classes, to provide access to guidance services necessary to Plaintiffs achievement of educational and career planning goals required as a part of their rehabilitation and treatment, and to provide disabled students with a free and appropriate education, including related and transition services, in accordance with the IDEA and state statutory requirements.

60.    As a result of Defendants' failures, Plaintiffs are denied their right to education, are subject to having their incarceration time extended for failure to meet treatment goals, and are denied the opportunity to meaningfully participate in the facility's "level system" and the receive the benefits associated therewith.

18

## I. Inadequate Programming

61.    Defendants fail to provide Plaintiffs with adequate programming. Defendants fail to provide any regular structured indoor or outdoor recreation. Furthermore, Defendants fail to provide access to regular large muscle exercise activities. As a result, Plaintiffs suffer from extended periods of force idleness.

## J. Failure to Adequately Train and Supervise Staff

62.    Defendants fail to adequately train and supervise staff at Scioto for the usual and recurring situations that they face and Plaintiffs are injured as a direct consequence. The need for more and different staff training is so obvious that Defendants' failure to provide such training amounts to deliberate indifference.

63.    Defendants' experts report that "[m]arginally prepared JCO's, who for the most part manage their female residents on a daily basis without supervisory oversight or presence, apparently without relevant training, routinely rely on practices that all too often expediently shut away their charges in seclusion, often using needless or excessive physical force to do so. Moreover, rather than employ confrontation avoidance practices, JCO's too often invite or heighten the risks of confrontation by engaging their charges in a fashion that at best is argumentative and threatening, and at worse, abusive." (Interim Report, pp. 18-19).

64.    As a result of Defendants' failure to adequately train and supervise the staff at Scioto, Plaintiffs suffer from physical and emotional harm and fail to receive treatment consistent with the purposes of their confinement.

19

### K.  Failure to Protect from Harm

65.    Defendants endanger Plaintiffs by inadequately training staff for their custody duties, by focusing on the use of force and unreasonable bodily restraints as methods of controlling Plaintiffs, by inadequately supervising staff at Scioto, by failing to investigate and abate dangerous conditions, by failing to develop and follow effective internal review process for reporting policy violations, and by failing to discipline JCO's appropriately.  Defendants fail to protect girls from injury by staff.

66.    Defendants fail to employ an adequate classification system for housing unit assignments and fail to provide adequate staffing in Scioto's living areas, thereby endangering the safety and security of Plaintiffs.  Staff regularly fail to monitor Plaintiffs who are placed in seclusion, fail to monitor and prevent Plaintiffs from engaging in self-mutilation or other self-injurious behavior, and fail to protect vulnerable girls from injury from other residents.

67.    As a result of Defendants' failure to protect girls confined in Scioto from harm, Plaintiffs suffer repeated physical and emotional injuries at the hands of staff and other youth.

### L.  Failure to Provide Adequate Grievance System

68.    Defendants fail to provide meaningful access to and fail to maintain an adequate grievance system. The grievance policies are not clear and the policies are inconsistent with the grievance forms provided to youth.  Grievance forms are not always available and staff interferes with Plaintiffs' access to the grievance system through acts of intimidation and retaliation. Defendants do not timely, if at all, respond to grievances and fail to keep adequate records of grievances filed.  Investigations of grievances are inadequate and when responses are provided they rarely are adequately resolved.

20

69.    The Defendants' experts reviewed the grievance system and concluded, "the grievance procedure is ineffective and is viewed as such by the girls." (Interim Report, p. 47). The experts also noted that "[I]t does not appear that the process for filing a grievance is understood by youth (and/or staff) or presented as an option that includes feedback about decisions regarding care." (Interim Report, p. 46). Investigations of grievances contain "few facts other than a repetition of the complaint and denials by those involved" and rarely result in any corrective action for the staff member or the youth. (Interim Report, p. 46).

70.    Grievances alleging use of excessive force or other improprieties by staff are often left in interminable limbo as they are investigated by the Chief Inspector from ODYS' central office. Investigations completed by the Chief Inspector's Office varied widely in quality and accuracy. In some cases the institutional investigations included more facts. Investigations by the Chief Inspector's Office were available to the Institutional Superintendent months (five to six months on many occasions) after the actual occurrence that obviously compromises the ability to impose administrative corrective or disciplinary action, which must by Labor contract "be timely." (Interim Report, p. 47).

71.    Plaintiffs are routinely subjected to retaliation from staff for filing grievances or participating as a witness in grievances filed by other girls. Staff retaliate by imposing unjustified discipline, denying earned privileges, denying access to services, and threatening and intimidating girls.

### M. Failure to Provide Equal Access to Placements and Services

72.    Defendants fail to provide Plaintiffs with equal access and services provided to boys committed to the custody of ODYS. Defendants fail to maintain any community correction beds for

21

girls and thus Plaintiffs are subjected to confinement in more restrictive, more punitive settings than their male counterparts.

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

73.    Plaintiffs incorporate by reference and reallege paragraphs 12 through 19.  Plaintiffs have exhausted all available administrative remedies for the deprivations complained of herein.

## VIII. NECESSITY FOR INJUNCTIVE RELIEF;
## NO ADEQUATE REMEDY AT LAW

74.    Defendants have acted and continue to act in violation of the law as described herein. Plaintiffs do not have an adequate remedy at law. As a proximate result of the policies, practices, acts, and omissions of Defendants, Plaintiffs have suffered and continue to suffer serious and irreparable physical, psychological, mental, and emotional injuries. Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs described herein. Defendants have acted and continue to act in violation of the law, and Plaintiffs will continue to suffer irreparable injuries from the conditions of confinement at Scioto and Defendants' policies, practices, acts, and omissions

## IX.  KNOWLEDGE OF THE DEFENDANTS

75.    Each of the Defendants has acted, and continues to act, under the color of state law with respect to all matters alleged herein. All of the conditions, policies, and practices described herein are the result of, and pursuant to, specific decisions, official policies, or customs of the Defendants.  Each of the Defendants has actual or constructive knowledge, or should have such knowledge, of the conditions, policies, and practices complained of herein.

## X. CAUSES OF ACTION

76.    Plaintiffs hereby incorporate by reference all of the above factual allegations in paragraphs 12 to 75 to support the following claims:

### Count I

The conditions of confinement at Scioto and Defendants' policies, practices, acts, and omissions complained of herein constitute punishment and subject Plaintiffs to denial of due process of law, in violation of Plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution.

### Count II

The conditions of confinement at Scioto and Defendants' policies, practices, acts, and omissions complained of herein are a substantial departure from accepted professional judgment, standards, and practices, and thereby subject Plaintiffs to denial of due process of law, in violation of Plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution, and related sections of the Ohio Constitution.

### Count III

The conditions of confinement at Scioto and Defendants' policies, practices, acts, and omissions complained of herein violate Plaintiffs' right to privacy under the First and Fourteenth Amendments to the United States Constitution and related sections of the Ohio Constitution.

### Count IV

Defendants' policies, practices, acts, and omissions complained of herein, and in particular Defendants' failure to provide adequate educational services, deprive Plaintiffs of their rights under

23

the Individuals with Disabilities Education Act, and regulations promulgated hereunder, and state law.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

    1.    Assume jurisdiction over this action;

    2.    Permit the named Plaintiffs to proceed in pseudonym;

    3.    Certify this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

    4.    Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, that the conditions of confinement at Scioto, and the policies, practices, acts, and omissions complained of herein:

    (A)    constitute punishment and subject Plaintiffs to denial of due process of law, in violation of Plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution;

    (B)    are a substantial departure from accepted professional judgment, standards, and policies, and thereby subject Plaintiffs to denial of due process of law, in violation of Plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution;

    (C)    violate Plaintiffs right to privacy in violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution; and

    (D)    deprive Plaintiffs of their rights under IDEA and state education law;

    5.    Issue preliminary and permanent injunctions restraining and prohibiting Defendants from confining any Plaintiffs in Scioto unless and until Defendants provide all of the following:

    (A)    adequate and effective policies and practices that ensure that Plaintiffs will not be subjected to unreasonable mechanical restraints and use of excessive force by staff;

24

(B)  adequate and effective means for Plaintiffs to report incidents of use of excessive force, unreasonable restraint or other improprieties by staff, without fear of retaliation by Scioto staff or anyone else;

(C)  an adequate and effective monitoring system to ensure supervision and accountability of staff with respect to the use of excessive force, unreasonable restraint, and seclusion;

(D)  adequate and effective measures to protect Plaintiffs who report staff abuse;

(E)  adequate and effective policies and practices to prohibit staff at Scioto from using handcuffs, shackles, and other mechanical restraints except in extraordinary circumstances, i.e., when individual Plaintiffs are completely out of control and a physical danger to themselves, other Plaintiffs, or staff, and staff have exhausted all other means to bring Plaintiffs back under control;

(F)  adequate and effective policies and practices to ensure that staff at Scioto use isolation or seclusion to control behavior only when individual Plaintiffs are out of control and a physical danger to themselves, other Plaintiffs, or staff, and staff have exhausted all other means to bring Plaintiffs back under control; that staff use isolation or seclusion only so long as the individual Plaintiffs are out of control; that any Plaintiff held in isolation or seclusion in response to out of control behavior cannot be held longer than one hour without approval from a supervisor; that any Plaintiff held in isolation or seclusion in response to out of control behavior be monitored by medical personnel or health-trained staff every fifteen minutes throughout time in isolation or seclusion; that any Plaintiff held in isolation or seclusion for more than thirty minutes in response to out of control behavior be monitored by a qualified mental health professional, and thereafter once an hour; that any Plaintiff may not be held in isolation or seclusion in response to out of control behavior for longer than four hours;

(G)  an adequate and effective disciplinary system that includes full due process protections for Plaintiffs prior to receiving sanctions for rule violations;

(H)  adequate staffing levels and procedures in the living areas at Scioto sufficient to protect Plaintiffs from risk of harm;

(I)  a system to adequately classify Plaintiffs according to legitimate security and safety needs;

(J)  adequate pre-hiring screening, pre-service and in-service training, and supervision of staff at Scioto;

(K)    adequate mental health services for Plaintiffs, including adequate assessments upon admission, sufficient numbers of qualified mental health professionals at the facility; individual counseling by mental health professionals, group counseling by adequately trained staff, adequate consultation for Plaintiffs who are suicidal or who are held for extended periods in isolation or seclusion, adequate training for staff to care for Plaintiffs with mental health needs;

(L)    adequate medical services for Plaintiffs, including adequate assessments upon admission, sufficient number of qualified medical professionals at the facility, adequate consultation and treatment of medical conditions, and adequate training of staff who care for Plaintiffs with medical conditions;

(M)    a free and appropriate public education, including, for Plaintiffs with educational disabilities, related and transition services, including identification, screening and assessment at admission, development and full implementation of Individual Education Programs and other records; sufficient numbers of qualified and appropriately trained special education, related services, and transition services personnel; effective methods to assure parental involvement or appointment of surrogate parents; and appropriate notification of parents of their rights and the rights of Plaintiffs; and

(N)    equal access and services as is provided to boys in ODYS custody, including an adequate number of community correction beds;

6.    Order Defendants to develop and implement a comprehensive plan for the correction of the unlawful policies, practices, acts, and omissions complained of herein and to submit this plan to the Court and to the attorneys for the Plaintiffs for review;

7.    Retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur;

8.    Award Plaintiffs the costs of this lawsuit and reasonable attorney's fees; and

9.    Order such additional relief as this Court may deem just and proper.

26

Respectfully submitted,

JENNIFER M. KINSLEY (Ohio Bar No. 0071629)
Sirkin Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
(513) 721-4876
jkinsley@sirkinpinales.com


KIM BROOKS TANDY (Ohio Bar No. 0076173)
ELIZABETH GORMAN (Ohio Bar No. 0062223)
Children's Law Center, Inc.
104 East 7th Street
Covington, Kentucky 41011
(859) 431-3313
kimbrooks@fuse.net
egorman@fuse.net


MARIA F. RAMIU (California Bar No. 146497)
(lead counsel)
(Admission *pro hac vice* pending)
Youth Law Center
417 Montgomery Street, Suite 900
San Francisco, CA 94104
(415) 543-3379 ext. 3908


MARC SCHINDLER
(Admission *pro hac vice* pending)
Youth Law Center
1010 Vermont Avenue NW, Suite 310
Washington, D.C. 20005
(202) 637-0377
mschindler@ylc.org

Counsel for Plaintiffs


27