IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | : | |
| Plaintiff, | : | Case No. 2:08-cv-475 |
| -vs- | : | Judge Algenon L. Marbley |
| **The State of Ohio,** *et al.***,** | : | |
| <u>Defendants.</u> | : | |
| **S.H., and all others similarly situated,** *et al.***,** | : | |
| Plaintiffs, | : | Case No. 2:04-cv-01206 |
| -vs- | : | Judge Algenon L. Marbley |
| **Tom Stickrath,** | : | Chief Magistrate Judge Kemp |
| <u>Defendant.</u> | : | |

**<u>Defendants' Pre-Hearing Brief Regarding Show Cause Hearing</u>**

## I. Introduction

**A. Relevant Procedural History**

In this civil rights class action that has been in its remediation phase for over two years, the Court has ordered Defendants to show cause why they should not be held in contempt for not complying with the Court's February 26, 2010, Order. (Doc. 179, Show Cause Order, p. 1, 6-7.) Defendants disagree that they are in contempt.

In the February 26, 2010, Order, the Court required:

> DYS [to] alter its Cafeteria Refusals Policy to reflect that: (1) the youth in DYS' custody and care must be fed and any youth

> articulating any fear for safety must be fed during the particular meal of refusal; and (2) when youth refuse to eat a meal in a facility cafeteria, DYS will keep records of the reason for that refusal. Additionally, by March 3, 2010, DYS will provide to the Court summary information and data on meal refusals from the Scioto, ORV, and Indian River facilities for the period of August 5, 2009, when the Cafeterial Refusals Policy was enacted, to February 23, 2010. This summary information and data should be provided in the same format as the information DYS provided to this Court about the Circleville facility prior to the Status Conference. The Court also directs that copies of the log books from the Circleville, Indian River, ORV, and Scioto facilities be provided along with the summary information.

(Doc. 160, Order, p. 6-7.) The facilities whose data are at issue include: Indian River Juvenile Correctional Facility ("IRJCF"); Scioto JCF ("SJCF"); Circleville JCF ("CJCF"); and Ohio River Valley JCF ("ORVJCF"). The Ohio Department of Youth Services ("ODYS") and all other Defendants have complied with that Order.

**B. The Testimony and Exhibits expected at the Show Cause Hearing will Show Defendants Complied with the February 26, 2010, Order. A written protocol issued on March 1, 2010, that identifies procedures to apply when a youth refuses a meal, and it provides youth who refuse to eat due to fear will be fed. Summary data were collected and supplied to the Court. Meal refusal data still are collected within ODYS.**

In the time period at issue, 352,000 meals were served. (Doc. 160-1, CJCF Meal Refusal Report; Doc. 162, SJCF, ORVJCF, and IRJCF's Meal Refusal Reports.) In that time period, the Court notes 2,812 meals were refused. (*See* Doc. 179, June 4, 2010, Order.) That is less than one percent of the meals refused.

ODYS first reported 2,244 refused meals in March 2010, or 568 less than what the Court had counted. The variance between the Court's numbers and ODYS' numbers, again, is 568, which is only 0.16% of the meals served. Following a

recount, ODYS would report more refused meals that it found. In fact, it found 505 missed refused meals at IRJCF because IRJCF used an Excel spreadsheet that did not contain data from December 10th to 31st, 2009.

Also, doing its recount in June 2010, IRJCF found another 13 refused meals that should have been counted and were not. Thus, the variance between the Court's count of refused meals and ODYS' count of refused meals should be 50, or 0.014% of the missed meals.

Regardless of the numbers, the evidence will show that ODYS and Defendants acted reasonably in their efforts to comply with the February 26, 2010, Order. Namely, instructions were sent from officials in Central Office to management staff at each of the facilities at issue. Management staff at each facility delegated to subordinates to obtain the summary data and obtain copies of the source documents. The results were then sent back up the chain of command. Defendants acted to use their available resources; issued orders to subordinates; and required and obtained results from those subordinates. *See Gnesys, Inc. v. Greene*, 437 F.3d 482 (6th Cir. 2005), quoting *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991).

The evidence expected at the Show Cause Hearing on July 14, 2010, will show the Ohio Department of Youth Services ("ODYS") issued a written protocol that applies when a youth refuses to go to the cafeteria for a meal. The evidence also will show that a youth will eat if he or she cites fear as the reason for not wanting to go the current meal.

3

The evidence also will show that ODYS has investigated what may have occurred to cause ODYS' numbers to be different from the numbers generated by the Court as reflected in the Court's Friday, June 4, 2010, Show Cause Order. In particular, the evidence will show that on Monday, June 7, 2010, ODYS gathered management staff from each facility that submitted summary data and collected copies of records regarding meal refusals. And, the evidence will show that ODYS and Defendants have identified possible ways to improve the data collection process.

As a result of the June 2010 recounting, the evidence will show that ODYS would adjust its count of the summary data. In particular, IRJCF would amend its total it should have reported in March 2010. And, it would increase that amount following the June 2010 recount.

IRJCF relied upon food service records to prepare its summary data, the evidence will show. In late 2009, staff members at IRJCF were tasked with tracking meal refusals. Such information was based upon forms called a Point of Service form. That form is used by food service to track the number of meals served and refused, which was provided to staff in the Superintendent's office.

That Point of Service information then was tracked in an Excel Spreadsheet. In late February 2010 or early March 2010, staff at IRJCF responded to instructions to provide summary data regarding meal refusals. Staff at IRJCF opened a version of that Excel spreadsheet that was incomplete. The evidence will show that for December 2009, not all points of data for refused meals were

4

contained in that spreadsheet. Thus, IRJCF reported 1,622 total meals refused in March 2010, and should have reported 2,127, as explained below.

Later, IRJCF also provided copies of its housing unit logs as required. It also provided copies of its Point of Service records. As part of its production in approximately early April 2010, staff at IRJCF printed out a copy of the Excel spreadsheet for Meal Refusals, this time using the version of the Excel Spreadsheet that contained all data for December 2009. With that complete Excel spreadsheet, IRJCF would have reported in 2,127 refused meals in March 2010 for the time period at issue.

Further, the evidence will show, IRJCF conducted a hand recount of the Point of Service forms, of which there are thousands. That started on June 7, 2010. It ended on June 22nd. As a result of that recount, IRJCF will report that it has 2,140 refused meals, increasing ODYS' total of refused meals by 518.

In addition to the IRJCF adjustments above, ODYS and Defendants believe the evidence will show other reasons might explain the variance between the Court's count of meal refusals compared to what ODYS has submitted. It is understood that the evidence will show instances where a youth reported to refuse a meal, however later went to the cafeteria. Such a meal refusal may have been counted, but only because redaction of a subsequent entry did not note that the meal was received. Also, ODYS and Defendants believe the evidence will show that there may be instances of double counting caused by unintended duplication of log

5

book pages during the copying process. Based upon the foregoing, ODYS and Defendants believe no contempt finding is proper.

## II. Evidence ODYS and Defendants expect to present at the Hearing

### A. Witnesses expected to testify

ODYS and Defendants expect to have testimony from the following during the Show Cause Hearing.

1. Interim Director Chris Money, Central Office
2. Facilities Bureau Chief Amy Ast, Central Office
3. Superintendent Marci Sutherland, ORVJCF
4. Deputy Superintendent Barbara Moore, ORVJCF
5. Chris Baker, Sr, Acting Superintendent, CJCF
6. Manuel Clarke, Unit Manager Administrator, CJCF
7. Mary Clay, Deputy Superintendent, CJCF
8. Carrolton Daniels, Acting Unit Manager Administrator, SJCF
9. Carla French, Executive Secretary, CJCF
10. Rose Harman, Administrative Assistant 3, CJCF
11. H. Mike Kline, Superintendent, IRJCF
12. Tim Mahaffey, Operations Administrator, CJCF
13. E. Earl Myles, Acting Deputy Superintendent, SJCF
14. Gwen Randle, Superintendent, SJCF
15. Jodi Slagle, Administrative Assistant 3, IRJCF
16. Jim Darnell, Acting Superintendent, IRJCF
17. Martha Spohn, Acting Deputy Director, Central Office
18. Any person needed to authenticate any documents
19. ODYS and Defendants reserve the right to amend this list with notice

6

**B.     Exhibits expected to be introduced at the hearing**

ODYS and Defendants expect to present the following documents as exhibits during the Show Cause Hearing.

1. Housing Unit logs from IRJCF, SJCF, CJCF, and ORVJCF
2. IRJCF's Point of Service records
3. IRJCF, SJCF, CJCF, and ORVJCF Meal Refusal Reports as filed by March 3, 2010
4. IRJCF, SJCF, CJCF, and ORVJCF Revised Meal Refusal Reports
5. Meal Refusal Protocol, as effective March 1, 2010
6. Meal Refusal Coversheet
7. Monthly OM Spreadsheet
8. Unit Log Sheet for Refused Meals
9. IRJCF Excel Spreadsheet with December 2009 data missing
10. IRJCF Excel Spreadsheet with December 2009 data included
11. Declarations by any listed witnesses
12. Grievances by youth regarding meal refusal issues
13. Any document delivered to the Court and the other Parties pursuant to Doc. 180, Order as governed by Protective Order issued June 24, 2010, Doc. 184.
14. The Monitor's Second Annual Report
15. Any other document whose relevance becomes known during the Show Cause Hearing

### III.   Initial Arguments Not to Impose Contempt

**A.   Additional Facts in Support of ODYS' compliance with this Court's February 26, 2010, Order**

On February 26, 2010, the Court ordered the Defendants:

1. alter its policy regarding refused meals; youth refusing to eat due to fear will be provided a meal and allowed to eat;

2. keep records of when youth refuse to eat a meal in a facility cafeteria; and,
3. produce "by March 3, 2010,...summary information and data on meal refusals from the Scioto, ORV, and Indian River facilities for the period of August 5, 2009, when the Cafeterial Refusals Policy was enacted, to February 23, 2010."

(Doc. 160, Wednesday, February 26, 2010, Order, p. 6-7.)

ODYS and Defendants expect to establish several facts at the Show Cause hearing. First, a protocol has been issued pursuant to the Court's February 26, 2010, Order. That protocol was issued in late February 2010, to be effective March 1, 2010. Among other points, that protocol requires youth to be fed if they (i) refuse to go to the cafeteria at meal time and (ii) cite fear for the reason. ODYS' meal refusal protocol also requires that food never be used as punishment.

Second, ODYS and Defendants complied with the Order by requiring data regarding refused meals to be collected on an ongoing basis. Personnel at IRJCF, SJCF, CJCF and ORVJCF continue to gather information about meal refusals pursuant to a policy in effect since March 1, 2010. Further, in light of the Court's Show Cause Order, ODYS has acted to improve that collection process. That policy sets forth four tracking requirements: (1) staff must document the refusal in the Unit Log Book, (2) note the reason the youth gives at the time of refusal, and (3) notify the on-duty Operations Manager who eventually will log all meal refusals, to include the reason for refusal.

Improvements have been developed for the collection process. One, a stand alone log book is used in each housing unit to track only meal refusals. Two, at the

8

June 7, 2010, meeting, ODYS officials identified ways to improve the data collection process. In short, a reconciliation process is now part of the collection effort.

As to the third aspect of the February 26, 2010, Order, ODYS has complied with the Court's instructions to submit summary data. (Doc. 162, Defendants' March 3, 2010, Notice of Compliance [summary data filed].) It then filed the source materials used to generate the summary data. That included copies of housing unit logs and point of service records. (Doc. 172, Defendants' April 9, 2010, Notice of Compliance [copies ready and too large for electronic filing].) ODYS manually filed the documents on April 13, 2010. (Doc. 175, Notice of Manual Filing.)

### B.  ODYS and Defendants have not disobeyed the February 26, 2010, Order, having taken reasonable steps to comply with it.

Contempt occurs when a party willfully disobeys a district court's lawful writ, process, order, rule decree, or command. 18 U.S.C. § 402; *Int'l Union v. Bagwell*, 512 U.S. 821, 827-830 (1994). To hold a party in contempt, a court must conclude that clear and convincing evidence shows that the alleged contemnor has violated an unambiguous, clear and specific court order which requires that party to either act or refrain from acting. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996); *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504-06 (8th Cir. 2000).[1]

---

[1] *See also, Elec. Workers Pension Trust Fund v. Gary's Electric Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).

Willfulness is not an element of civil contempt and need not be shown. *Rolex*, 74 F.3d at 720. State of mind is only relevant in considering sanctions. *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985). Good faith is not a defense, either, to civil contempt. *Peppers v. Barry,* 873 F.2d 967, 968 (6th Cir. 1989).

Without waiving any other arguments or defenses, ODYS and Defendants assert that they complied with the February 26, 2010, Order. The applicable standard to assess whether compliance occurs considers the following:

> (1) whether "the defendant took all reasonable steps within their power to comply with the court's order"; and,
> (2) whether the defendant:
>> "marshaled their own resources,
>> "asserted their high authority, and
>> "demanded the results needed from subordinate persons and agencies" to comply with the order.

*Gnesys, Inc. v. Greene*, 437 F.3d 482 (6th Cir. 2005), quoting *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991).

**C. ODYS and Defendants took all reasonable steps, marshaled their resources, asserted their authority, and demanded subordinates produce the results identified in the February 26, 2010, Order.**

ODYS and Defendants have complied with all three parts of the disputed Order. ODYS and Defendants have three major facts to support the lack of contempt. First, ODYS has issued a policy that required youth to be fed when they cite fear as a basis for not going to a facility's cafeteria at a meal time.

Second, ODYS generates and maintains records about refused meals and why meals were refused. Such record keeping also directs staff to ensure that youth who

10

refuse to go to the cafeteria for the next meal are served with a meal if fear is the reason given for not wanting to go to the cafeteria.

ODYS also has improved on its data collection process – both before and after the Show Cause Order was issued. Prior to the Show Cause Order, ODYS changed its protocol to now require housing units to maintain a separate housing log to track refused meals.

Following the Court's Show Cause Order issued on June 4, 2010, ODYS officials met at Central Office on Monday, June 7, 2010. As part of the discussions, ODYS officials realized that the data collected in the dedicated meal refusal logs in the housing units and the log generated in the Operations Manager's office should be reconciled. As such, ODYS added reconciliation procedures to ensure meal refusal data are as accurate as possible.

Third, the Court ordered Defendants on February 26, 2010, to do the following affirmative act:

> Additionally, by March 3, 2010, DYS will provide to the Court summary information and data on meal refusals from the Scioto, ORV, and Indian River facilities for the period of August 5, 2009, when the Cafeterial Refusals Policy was enacted, to February 23, 2010.

(Doc. 160, Order, p. 6-7.) ODYS has complied with that part of the Order, as well, as explained further below.

The Court generated a set of numbers reflecting its count of the instances of refused meals by youth in ODYS's custody from August 2009 to February 2010. (Doc. 179, June 4, 2010, Show Cause Order.) ODYS has required its personnel to

recount the instances of meal refusals as submitted in March 2010, which led to slightly different results and which will be explained, in part at least, prior to the show cause hearing.

Applying the Court's counts of the instances of refused meals as being correct, it would appear that a variance of twenty percent (20%) exists between the two. However, case law from the Sixth Circuit would indicate even such a difference does not reflect contemptable action (or inaction) by a defendant.

*G.G. Marck & Assocs.* involved a contempt order for party's submission of inaccurate data. In *G.G. Marck & Assocs.*, the Northern District of Ohio ordered Defendant, by injunction, not to submit "falsified or inaccurate documentation to U.S. Customs." *G.G. Marck & Assocs.*, 309 Fed. Appx. 928, 937 (6th Cir. 2009). Later, the defendant, an importer/exporter, submitted transactional values for his products to United States Customs that varied from his tax returns by up to twenty percent (20%). *G.G. Marck & Assocs.*, 309 Fed. Appx. at 937.

Despite this discrepancy, the Sixth Circuit overturned the District Court's contempt order. The Sixth Circuit found that the Defendant presented evidence that parties typically report differently the value of their products to the IRS and to U.S. Customs. *G.G. Marck & Assocs.*, 309 Fed. Appx. at 937. Moreover, the Sixth Circuit found that the defendant had calculated his values in good faith. *G.G. Marck & Assocs.*, 309 Fed. Appx. at 937. As a result, the Sixth Circuit held that the proponent of the motion for contempt had failed to meet his burden to demonstrate by clear and convincing evidence that defendant violated a court order. *Id.*

Before the Sixth Circuit, an error rate in reporting facts and figures by a margin of error of 20% did not suffice to find the defendant in contempt.  Using only the Court's count and ODYS's corrected summary figure, this matter involves an initial reported error rate of 20%.  Using the error rate expected to be established at the hearing, this case could involve only a 2.24% difference between what the Court counted and what ODYS now counts.  With the evidence expected at the hearing, ODYS expects to have only a variance of 50 between the Court's tallies and ODYS' counts of refused meals, which is only 0.014% of the meals served.

Further, good faith efforts to obtain the requested data are reflected in the following.  First, the Court permitted Defendants less than one full business between notice of the pending order to obtain summary data and its due date, March 3, 2010.  (See Doc. 160, February 26, 2010, Order.)

Second, ODYS informed the Court that the housing unit logs prior to February 2010 were not necessarily used to track meal refusal data in a manner that they Court may have been expecting.  (*See* Transcript, February 24, 2010, Status Conference, p. 14-5.)  Nonetheless, ODYS acted to obtain the indicated data from the housing unit logs.

Third, when Defendants learned of the Court's reported figures for the refused meals, announced three months after ODYS had submitted such numbers, ODYS took immediate action.  Namely, ODYS met on the next business day to confer and address the Court's concerns.  Fourth, ODYS conducted its recount and identified improvements to the data collection process.

13

Based on the foregoing, ODYS complied with all three parts of the February 26, 2010, Order. (1) It has a policy to feed youth who at first refuse due to fear. (2) It tracks meal refusal data. (3) It submitted as required (i) summary data of meal refusals from August 2009 to February 2010 and (ii) copies of the housing unit logs and point of service records used to prepare the summary data in under one business week from February 26, 2010, to March 3, 2010.

Contempt does not describe ODYS or Defendants. Instead, they responded to the Court's February 26, 2010, as to the summary data with all proper quickness; they submitted the required underlying source data; and, they have the required meal refusal protocol in place.

## IV.  Conclusion

ODYS and Defendants ask the Court to find no basis exists to hold ODYS or any other Defendant in contempt.

Respectfully submitted,

**RICHARD CORDRAY**
Ohio Attorney General

/s/ *J. Eric Holloway*
**J. ERIC HOLLOWAY** (0063857)
Trial Counsel for all Defendants
Assistant Attorney General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, OH 43215
(614) 644-7233; Fax: (866) 459-6675
Eric.Holloway@OhioAttorneyGeneral.gov

14

## Certificate of Service

I certify that, on July 1, 2010, a copy of the foregoing **Defendants' Pre-Hearing Brief** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/*J. Eric Holloway*
J. Eric Holloway