IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| S.H., a minor child and all others similarly situated, *et al.*, | : : : | Case No. 2:04-CV-1206 |
| Plaintiffs, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | Magistrate Judge Kemp |
| HARVEY J. REED, | : : | |
| Defendant. | : : : : : | |
| UNITED STATES OF AMERICA, | : : | Case No. 2:08-CV-00475 |
| Plaintiff, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | |
| THE STATE OF OHIO, *et al.*, | : : | |
| Defendants. | : | |

**ORDER**

This matter is before the Court on the Parties' Joint Motion to Terminate the Consent Decree. (Doc. 410.) The Court-appointed monitors, Will Harrell and Kelly Dedel ("the Monitors"), have submitted final reports on the Department of Youth Services' ("DYS") facilities for boys and DYS-contracted facilities for girls, finding DYS in substantial compliance with the remaining quality assurance measures under monitoring. All parties now agree that this case should be terminated. The Monitors have also submitted a final report entitled "The Ohio Model: A Report on the Transformation of the Ohio Department of Youth Services, 2007-2015," which details the remarkable improvement in conditions of confinement in DYS juvenile

1

facilities over the last seven years.  They hope to use this report in part to "memorialize the agency's major policy and practice decisions for the benefit of others in the field."  (Doc. 411.)  The Court will briefly summarize the history of the litigation and highlight some of the remarkable improvements at DYS facilities since this case began.

## I.     HISTORY OF THIS LITIGATION

On December 20, 2004, Plaintiffs in *S.H. v. Reed*, No. 2:04-cv-1206, filed a complaint challenging conditions at DYS juvenile correctional facilities.  The Court later entered an order certifying the *S.H.* case as a class action.  (Doc. 67.)  The *S.H.* plaintiffs challenged the application by staff of unnecessary force; arbitrary and excessive use of isolation and seclusion, arbitrary and excessive discipline; inadequate mental health, medical, and dental care; inadequate educational services; inadequate structured programming; broadly inadequate training of staff; an unsafe living environment; and a dysfunctional grievance system.  (Doc. 76 at 6.)  On May 16, 2008, the United States filed a similar complaint in the companion case *United States v. Ohio*, No. 2:08-cv-475.  On May 18, 2007, the Court approved a case management plan under which the parties agreed to a joint fact finding team, and that team's report was filed on December 31, 2007.  On May 21, 2008, the parties agreed to a Stipulation of Injunctive Relief which incorporated that Report and established that the conditions of confinement for youth in DYS facilities violated the constitutional and statutory rights of those youth.  (Doc. 108.)  The Stipulation provided for a period of oversight by a Court-appointed monitor for five years.  (*Id.* at 87.)

On February 18, 2014, the *S.H.* Plaintiffs filed a motion for specific performance and alleged a failure to provide adequate treatment to youth who are or have been on the mental health caseload, in particular faulting the excessive periods of seclusion to which these youth

2

were subjected. The United States also filed a supplemental complaint renewing its motion for a temporary restraining order. Through settlement negotiations, the parties reached an agreement on the resolution of Plaintiffs' claims, which the Court approved. (Doc. 401.)

This settlement established a Grid that detailed the actions Defendants committed to undertake to improve mental health services and reduce seclusion of youth on the mental health caseload. (Doc. 401-1.) The remaining areas to be monitored included quality assurance and peer review for mental health and psychiatry, case formulation, fidelity of treatment provided to treatment model, treatment planning and treatment terms, behavior contracts, suicide prevention, and discipline for youth on the mental health caseload through the intervention hearing process. (Doc. 400 at 3.) Starting on July 31, 2014, DYS agreed to provide to the Monitors quarterly reports on its seclusion practices. The parties agreed that Defendants' compliance with the Grid would be monitored by Mr. Harrell and Dr. Dedel until DYS maintained substantial compliance with all provisions and performance measures for six months. Although the order indicated that the Grid applies only to youth at facilities directly managed by DYS, it also specified that "youth at other facilities shall receive mental health services consistent with those described [in the Grid] but appropriately tailored for such non-DYS managed facilities." (Doc. 401-1 at 9.) These other facilities include the contracted facilities which house girls.

## II. CURRENT CONDITIONS AT DYS FACILITIES

In June 2015, the Monitors filed a Compliance Report for the DYS boys' facilities ("Boys Report"). (Doc. 407.) In November 2015, the Monitors also filed a review of the DYS contracted programs for girls ("Girls Report"). The Boys Report, and the memos that followed it in August 2015, concluded that DYS is now in substantial compliance with all of the provisions and performance measures incorporated in the Grid. The Girls Report concluded that the

practices at the contracted girls' facilities were functionally equivalent to services prescribed by the Grid for boys at DYS facilities, including significant progress in quality of treatment and further restrictions on the use of seclusion. The improvements documented by the Ohio Model Report include the following:

- The video recording and review of all applications of the use of force, and intensive staff training and oversight for compliance with the use-of-force policy

- A meaningful grievance system and easy access to attorneys to address concerns related to fact, duration, and conditions of confinement

- Abolition of the practice of disciplinary seclusion and dramatic reductions in pre-hearing seclusion

- Fully staffed and well-managed educational programming and the elimination of school suspensions and school-day reductions

- Improved systems for health assessments, physical exams, maintenance of medical records, and more thorough documentation, as well as chronic care and medication administration that is now consistent with national guidelines

- New Program Administrator positions at each facility; expanded access to work programs (for high school graduates); Youth Councils that offer youth a meaningful role in decision-making; positive behavior incentive programs for youth; cognitive behavioral therapy program to target youth at risk of reoffending or gang involvement

- Video conferencing technology and bus transportation to increase family visitation and a policy of seven-day-a-week visitation

- Vastly improved mental health treatment including group treatment sessions; quality oversight of staff; easy accessibility of treatment professionals; and the replacement of punitive Special Management Plans that relied excessively on seclusion with Behavior Contracts, tailored plans with incentives and consequences

- Development of standardized criteria to deny a youth's release rather than making such decisions without any criteria, as well as a meaningful process to appeal a release denial

- Reducing the incarcerated population from over 2000 youth several years ago to less than 500 today through the initiative RECLAIM, whereby DYS partnered with juvenile courts throughout the state to increase their capacity effectively to supervise and serve youth at the county level, which has led to less school interruption, more family engagement, and better behavioral outcomes for youth.

### III. CONCLUSION

The Court concludes that the Defendants have complied with the terms and modifications of the Stipulation for Injunctive Relief in Case No. 2:04-cv-1206 and the consent decree in Case No. 2:08-cv-475.  The Joint Motion to Terminate the Consent Decree is **GRANTED**.  The consent decree is hereby **TERMINATED**.

**IT IS SO ORDERED.**

                                                    *s/ Algenon L. Marbley*
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED:  December 9, 2015**